Paul B. Gaffney (PG 7800)
Christopher N. Manning (CM 4231)
Jessamyn S. Berniker (JB 0686)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AMERICAN BROADCASTING COMPANIES, INC.,
CBS BROADCASTING INC., DISNEY ENTERPRISES,
INC., FOX BROADCASTING COMPANY, SPELLING
TELEVISION INC., SUPERSTATION, INC., TBS
FUNDING CORP., TURNER ENTERTAINMENT
NETWORKS, INC., TURNER NETWORK TELEVISION
LP, LLLP, UNIVERSAL NETWORK TELEVISION LLC,
and UNIVERSAL TELEVISION NETWORKS,

                      Plaintiffs,

  - against -

FLYING J, INC. and TON SERVICES, INC.,

                      Defendants.
------------------------------------------------------------------X

No.

**COMPLAINT**
JURY TRIAL
DEMANDED

Plaintiffs American Broadcasting Companies, Inc., CBS Broadcasting Inc.,

Disney Enterprises, Inc., Fox Broadcasting Company, Spelling Television Inc., Superstation,

Inc., TBS Funding Corp., Turner Entertainment Networks, Inc., Turner Network Television LP,

LLLP, Universal Network Television LLC, and Universal Television Networks ("Plaintiffs")

aver and allege as follows:

## NATURE OF THE CASE

1.      Defendant Flying J, Inc. ("Flying J") is the owner of a nationwide chain of branded truck stops. Flying J has engaged and continues to engage in copyright infringement and unfair competition by attaching commercial advertisements from its own advertising customers to the copyrighted television programming shown to Flying J customers at its truck stops. Flying J sells those advertisements through its wholly owned subsidiary, Defendant TON Services, Inc. ("TON"). Plaintiffs, who own the copyrights and/or exclusive telecast rights to much of the programming seen on television—and whose businesses depend on revenues from the *bona fide* advertisements Defendants are replacing with their own—bring this action for damages and an injunction against Defendants' parasitic, unlawful activity.

## JURISDICTION AND VENUE

2.      As this case arises in part under the Copyright Act, 17 U.S.C. § 101, *et seq.*, jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1332 and 1338(a). The amount in controversy exceeds $75,000. This Court has jurisdiction over the related state law claim pursuant to 28 U.S.C. §§ 1332, 1338 and 1367.

3.      This Court has personal jurisdiction over Defendants on account of their continuous and ongoing business contacts with residents of New York through, among other things, the ownership or control of the Flying J truck stop in New York, where the unlawful activity has occurred and continues to occur; by intentionally engaging in acts targeted at New York that have caused harm to Plaintiffs in this State and District; and by engaging in the wrongful acts alleged herein in New York. For the same reason, venue lies in this District pursuant to 28 U.S.C. §§ 1391 and 1400.

## THE PLAINTIFFS AND THEIR WORKS

4. Plaintiff American Broadcasting Companies, Inc. is a Delaware corporation with its principal place of business in New York.

5. Plaintiff CBS Broadcasting Inc. is a New York corporation with its principal place of business in New York.

6. Plaintiff Disney Enterprises, Inc. is a Delaware corporation with its principal place of business in California.

7. Plaintiff Fox Broadcasting Company is a Delaware corporation with its principal place of business in California.

8. Plaintiff Spelling Television Inc. is a Delaware corporation with its principal place of business in California.

9. Plaintiff Superstation, Inc. is a Georgia corporation with its principal place of business in Georgia.

10. Plaintiff TBS Funding Corp. is a Georgia Corporation with its principal place of business in Georgia. TBS Funding Corp. is the copyright assignee of Cable News Network LP, LLLP, and will be referred to herein as "CNN."

11. Plaintiff Turner Entertainment Networks, Inc. is a Georgia corporation with its principal place of business in Georgia.

12. Plaintiff Turner Network Television LP, LLLP, formerly known as Turner Network Television, Inc., is a Delaware limited liability limited partnership with its principal place of business in Georgia.

13. Plaintiff Universal Network Television LLC, formerly known as Studios USA Television LLC, is a Delaware limited liability company with its principal place of business in California.

14. Plaintiff Universal Television Networks is a New York general partnership with its principal place of business in New York.

15. Plaintiffs are among the world's preeminent creators, producers, and distributors of copyrighted entertainment, news, and sports programming. Each of the Plaintiffs is engaged in the business of producing copyrighted motion pictures and/or television programming, distributing, publicly performing, and displaying those works, and/or licensing them to or from others for distribution. Plaintiffs spend millions of dollars annually creating and disseminating copyrighted works because copyright law provides the economic incentive to do so. One of the primary methods of distribution for copyrighted audiovisual works is by telecast on free, over-the-air television, on cable television systems, and via direct satellite services such as Dish Network and DirecTV. Plaintiffs and others who own and distribute copyrighted works through these channels derive a substantial part of their revenues through the sale of commercial advertisements shown during designated commercial breaks within and between such programs.

16. Among the enormous number of copyrighted works owned by or exclusively licensed to Plaintiffs are those identified on Exhibit 1 hereto, each of which is the subject of a valid Certificate of Copyright Registration from the Register of Copyrights (or for which an application for such a certificate is pending).

17. Plaintiffs, directly or through their affiliates, also own some of the most well-known and widely watched television networks and programming services, including all of the major broadcast networks—ABC, CBS, NBC, and FOX—as well as numerous cable

television channels. Plaintiffs' network and cable television outlets commonly carry programming owned by others, pay substantial license fees for the exclusive right to do so, and generate a substantial portion, or, in the case of network television, virtually all, of their revenue through the sale of commercial advertising.

### DEFENDANTS' WRONGFUL CONDUCT

18. Defendants are corporations located in and organized under the laws of Utah. Flying J operates "Flying J" truck stops at more than 130 locations across the United States, including Pembroke, New York. TON, a wholly owned subsidiary of Flying J, provides various services to truckers and other customers of Flying J at many or all of the same locations, including, upon information and belief, Pembroke, New York.

19. Flying J truck stops are commercial establishments open to the public. According to Flying J's promotional materials, each of its truck stops serves, on average, more than 140,000 customers per month. Among the amenities Defendants provide to their customers are several television sets located throughout each facility—including the restaurant and the drivers' lounge—tuned to regular programming supplied via direct broadcast satellite to Flying J's truck stops by EchoStar Communications, operating as Dish Network. Among the many channels offered by Dish Network, and thus made available by Defendants to their patrons, are those identified in paragraph 17 plus many others on which many of Plaintiffs' works are shown. By providing such television viewing for its customers, Defendants are publicly performing the copyrighted works featured in such telecasts.

20. The commercial time sold to advertisers for viewing by the television public is a primary—and indeed, for broadcast networks, the virtually exclusive—financial means by which networks and cable channels are able to make television programming available

to their viewers. It is the appeal of Plaintiffs' and others' copyrighted programs which create this sales opportunity, and which in turn provides Plaintiffs and other copyright proprietors with the financial incentive to create their works in the first place and to provide programming services and television networks.

21.     Defendants have misappropriated and continue to misappropriate this valuable opportunity. Instead of showing the commercial advertisements that are part of the original Dish Network programming feed, Flying J and TON utilize a device (or series of devices, including software) (the "Device") to wrongfully replace those commercials with substitute commercials targeted at the Flying J customer demographic that Defendants are paid to display by their own advertising customers. This Device—which upon information and belief is supplied to Flying J by non-party segOne, Inc.—is incorporated into the television system Flying J has installed in its truck stops. Interposed between the truck stop's satellite dish and each of its televisions, the Device detects transitions between the television programs and the commercial advertisements transmitted by the direct broadcast satellite service to which Defendants subscribe. Upon detecting a transition, the Device interrupts the feed for a pre-set period of approximately two minutes, during which the Device plays pre-recorded substitute commercials sold by TON and geared toward the Flying J customer demographic.

22.     Flying J and TON have branded this commercial replacement service as "Plaza TV." Defendants earn money from Plaza TV by selling commercial time during the breaks in Plaintiffs' and others' copyrighted television programming—the same commercial time on which Plaintiffs depend—to advertisers who want to market their goods and services to truckers and others within the Flying J customer demographic. According to the Flying J/TON website, the Plaza TV advertising service "has the unique ability to deliver your customized

advertising message on TV's within our facilities across the country." *See* Exhibit 2 at 2. According to the website, customers of the Plaza TV advertising program pay Flying J and/or TON more than $30,000 per month to air 30-second commercials to Flying J patrons. *Id.* at 4. These commercials replace the commercials that Plaintiffs and others have already sold to advertisers for viewing in conjunction with Plaintiffs' television programming and which were transmitted to Defendants with such programming as part of the Dish Network feed.

   23. Among the exclusive rights granted to copyright proprietors under Section 106 of the Copyright Act is the right to publicly perform and authorize others to publicly perform their copyrighted works. Defendants' public performance of Plaintiffs' copyrighted works in their truck stops utilizing Defendants' commercial replacement system violates this exclusive right of Plaintiffs and falls well outside the scope of the limited exemption granted commercial establishments under 17 U.S.C. § 110(5)(A) to publicly perform copyrighted works using the kind of apparatus commonly used in private homes. Indeed, the integrated commercial replacement system employed by Defendants in displaying Plaintiffs' works and networks is, according to SegOne's website, targeted not to consumers but to "national corporate accounts" in the "trucking, health care, restaurant, fitness and hotel industries," *see* Exhibit 3 at 8, who want to convert and usurp for their own financial gain the advertising opportunities created by the television programming of Plaintiffs and others.

   24. Flying J and TON have deployed the Plaza TV service in the following manner at Flying J's Pembroke, New York truck stop:

    a. On December 17, 2005, while the television program "CNN U.S. Feed from 5:30 AM December 5, 2005 through 5:30 AM December 19, 2005" was being shown on CNN in the restaurant, Defendants' Plaza

7

TV Device replaced the commercial advertisements transmitted to Flying J's truck stop with advertisements for "Prostacycle" and "Motorkote." Plaintiff CNN owns the copyright to the television program "CNN U.S. Feed from 5:30 AM December 5, 2005 through 5:30 AM December 19, 2005." *See* Exhibit 1.

b. On December 21, 2005, while the television program "CNN U.S. Feed from 5:30 AM December 19, 2005 through 5:30 AM January 2, 2006" was being shown on CNN in the restaurant and smoking lounge, Defendants' Plaza TV Device replaced the commercial advertisements transmitted to Flying J's truck stop with advertisements for "Prostacycle" and "Motorkote." Plaintiff CNN owns the copyright to the television program "CNN U.S. Feed from 5:30 AM December 19, 2005 through 5:30 AM January 2, 2006." *See* Exhibit 1.

c. On December 21, 2005, while the television program "Charmed" was being shown on TNT in the drivers' lounge, Defendants' Plaza TV Device replaced the commercial advertisements transmitted to Flying J's truck stop with advertisements for "Work At Home Institute," "FTS Sales," "Prostacycle," "Motorkote," "American Truckers Legal Association," "Attorney James Rolshouse," and "Gear Keeper." Plaintiff Spelling Television Inc. owns the copyright to the television program "Charmed." *See* Exhibit 1.

d. On December 21, 2005, while the television program "Law and Order" was being shown on TNT in the drivers' lounge, Defendants' Plaza

TV Device replaced the commercial advertisements transmitted to Flying J's truck stop with advertisements for "Truckers' Magazine," "Speedco," "American Tax Relief," "CB Mike Keeper," "Prostacycle," "Motorkote," and "FTS Sales." Plaintiff Universal Network Television LLC, formerly known as Studios USA Television LLC, owns the copyright to the television program "Law and Order." *See* Exhibit 1.

e. On December 21, 2005, while the motion picture "Pretty Woman" was being shown on TNT in the driver's lounge, Defendants' Plaza TV Device replaced the commercial advertisements transmitted to Flying J's truck stop with advertisements for "Mega Health," "Astatic," "Gear Keeper," "Prostacycle," "Speedco," "American Truckers Legal Association," "Motorkote," "American Tax Relief," "Attorney James Rolshouse," and "Credit Guard of America." Plaintiff Disney Enterprises, Inc. owns the copyright to the motion picture "Pretty Woman." *See* Exhibit 1.

f. On December 27, 2005, while the television program "CNN U.S. Feed from 5:30 AM December 19, 2005 through 5:30 AM January 2, 2006" was being shown on CNN in the restaurant, store, and smoking lounge, Defendants' Plaza TV Device replaced the commercial advertisements transmitted to Flying J's truck stop with an advertisement for "Credit Guard." Plaintiff CNN owns the copyright to the television program

"CNN U.S. Feed from 5:30 AM December 19, 2005 through 5:30 AM January 2, 2006." *See* Exhibit 1.

g. On December 27, 2005, while the film "Hollow Man" was being shown on USA in the drivers' lounge, Defendants' Plaza TV Device replaced the commercial advertisements transmitted to Flying J's truck stop with advertisements for "Attorney James Rolshouse," "Gear Keeper," "Truckers' Magazine," and "Speedco." Plaintiff Universal Television Networks owns exclusive English-language television rights to the film "Hollow Man." *See* Exhibit 1.

h. On January 4, 2006, while the ABC telecast of the "Rose Bowl (USC v. Texas)" was being shown in the driver's lounge, Defendants' Plaza TV Device replaced the commercial advertisements transmitted to Flying J's truck stop with advertisements for "Credit Guard of America," "Mega Health," "America Truckers Legal Association," "Work At Home Institute," "Flying J Internet Kiosk," "Speedco," "Prostacycle," "American Tax Relief," "Volvo 880 Trucks," and "Motorkote." Plaintiff American Broadcasting Companies, Inc. owns the exclusive broadcast rights to the January 4, 2006 telecast of the "Rose Bowl (USC v. Texas)." *See* Exhibit 1.

i. On January 6, 2006, while the television program "ER" was being shown on TNT in the drivers' lounge, Defendants' Plaza TV Device replaced the commercial advertisements transmitted to Flying J's truck stop with advertisements for "Mega Health," "American Truckers

      Legal Association," "Speedco," "Work at Home Institute," "Motorkote," "Prostacycle," "First Funds," "Flying J Internet Kiosk," "Volvo Truck 880," and "American Tax Relief." Plaintiffs Superstation, Inc. and Turner Network Television LP, LLLP, formerly known as Turner Network Television, Inc., own the exclusive license to the television program "ER." *See* Exhibit 1.

j. On January 22, 2006, while the CBS telecast of the "American Football Conference Championship (Pittsburgh Steelers at the Denver Broncos)" was being shown in the driver's lounge, Defendants' Plaza TV Device replaced the commercial advertisements transmitted to Flying J's truck stop with advertisements for "American Truckers Legal Association," "First Funds," and "Speedco." Plaintiff CBS Broadcasting Inc. was the exclusive broadcast licensee of the January 22, 2006 telecast of the "American Football Conference Championship (Pittsburgh Steelers at the Denver Broncos)." *See* Exhibit 1.

k. On January 22, 2006, while the Fox telecast of the "National Football Conference Championship (Carolina Panthers at the Seattle Seahawks)" was being shown in the driver's lounge, Defendants' Plaza TV Device replaced the commercial advertisements transmitted to Flying J's truck stop with advertisements for "Prostacycle," "Speedco," "American Tax Relief," "Volvo 880 Trucks," "Motorkote," "American Truckers Legal Association," "Credit Guard of America," "Consolidated Credit," "Mega Health," and "Flying J

Internet Kiosk." Plaintiff Fox Broadcasting Company was the exclusive broadcast licensee of the January 22, 2006 telecast of the "National Football Conference Championship (Carolina Panthers at the Seattle Seahawks)." *See* Exhibit 1.

l. On January 24, 2006, while the television program "CNN U.S. Feed from 5:30 AM January 16, 2006 through 5:30 AM January 30, 2006" was being shown on CNN in the restaurant, store and smoking lounge, Defendants' Plaza TV Device replaced the commercial advertisements transmitted to Flying J's truck stop with advertisements for "Flying J Internet Kiosk" and "First Funds." Plaintiff CNN owns the copyright to the television program "CNN U.S. Feed from 5:30 AM January 16, 2006 through 5:30 AM January 30, 2006." *See* Exhibit 1.

m. On January 24, 2006, while the television program "Charmed" was being shown on TNT in the driver's lounge, Defendants' Plaza TV Device replaced the commercial advertisements transmitted to Flying J's truck stop with advertisements for "Volvo 880 Trucks," "American Tax Relief," "Flying J Internet Kiosk," "American Truckers Legal Association," and "Motorkote." Plaintiff Spelling Television Inc. owns the copyright to the television program "Charmed." *See* Exhibit 1.

n. On January 24, 2006, while the television program "ER" was being shown on TNT in the drivers' lounge, Defendants' Plaza TV Device replaced the commercial advertisements transmitted to Flying J's truck

       stop with advertisements for "Volvo Trucks 880," "Credit Guard of America," "Consolidated Credit," "Mega Health," "American Truckers Legal Association," "Work at Home Institute," "First Funds" and "Speedco." Plaintiffs Superstation, Inc. and Turner Network Television LP, LLLP, formerly known as Turner Network Television, Inc., own the exclusive license to the television program "ER." *See* Exhibit 1.

   o. On March 8, 2006, while the television program "Law and Order" was being shown on TNT in the drivers' lounge, Defendants' Plaza TV Device replaced the commercial advertisements transmitted to Flying J's truck stop with advertisements for "American Tax Relief," "800 Credit Card Debt," and "Consolidated Credit." Plaintiff Universal Network Television LLC, formerly known as Studios USA Television LLC, owns the copyright to the television program "Law and Order." *See* Exhibit 1.

25. Defendants' public performance of Plaintiffs' copyrighted works in this manner is done without any authorization from Plaintiffs.

## COUNT I—COPYRIGHT INFRINGEMENT

(Violation of 17 U.S.C. §§ 106, 501)

26. Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 25 as if fully set forth herein.

27. Plaintiffs own the copyrights or exclusive licenses to the works listed on Exhibit 1 hereto.

13

28. Flying J truck stops are open to the public. By making television programming available for viewing in the public areas of those truck stops, Defendants are publicly performing the copyrighted works embodied in that programming, including those works listed on Exhibit 1.

29. The public performance by Flying J and/or TON of the works listed on Exhibit 1, utilizing the commercial-substitution Device described herein, violates the exclusive rights of Plaintiffs under 17 U.S.C. § 106. Defendants have also, in the same manner, violated Plaintiffs' exclusive rights in numerous other works.

30. The infringement of Plaintiffs' rights in and to each of the copyrighted works constitutes a separate and distinct act of infringement.

31. These acts of infringement have been willful, intentional, and purposeful, and in disregard of and indifference to Plaintiffs' rights.

32. As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and/or exclusive rights under copyright, Plaintiffs are entitled to damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b) for each infringement.

33. Alternatively, Plaintiffs are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as the Court may deem proper under 17 U.S.C. § 504(c).

34. Plaintiffs are further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

35. Through their course of conduct and public statements, Defendants have demonstrated an intention to continue to perform publicly Plaintiffs' works in the manner described above. This conduct threatens to cause, and is causing, and unless enjoined and

restrained by this Court will continue to cause, grave and irreparable injury to Plaintiffs that cannot be fully compensated for or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further infringements of their copyrights and/or exclusive rights under copyright.

## COUNT II—UNFAIR COMPETITION

36. Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 35 as if fully set forth herein.

37. The opportunity and ability to sell commercial time on television networks, programming services, and cable channels is engendered by the popularity and appeal of the copyrighted television programming for which it is sold and is fundamental to the underlying economics of the television business. Indeed, this advertising opportunity is part of what makes commercial television possible. Free over-the-air broadcast television networks, television stations, programming services, and cable channels rely upon commercial advertising revenues to pay the cost of creating, producing, licensing, and distributing the entertainment, sports, and news programming enjoyed by millions across the country.

38. Through the conduct described above, in direct and unfair competition with Plaintiffs, Defendants have misappropriated and continue to misappropriate for their own commercial advantage the popularity of the television programs Plaintiffs own or license, along with the ability and valuable opportunity to sell commercial advertising time associated with that programming. Through their parasitic "Plaza TV" advertising business, Defendants are reaping what they have not sown and have taken the skill, expenditures, and/or labors of Plaintiffs and used them to compete against Plaintiffs for their own commercial advantage.

39. Defendants have been enriched at Plaintiffs' expense. Equity and good conscience militate against permitting Defendants to retain this benefit.

40. Defendants' conduct in taking what does not belong to them, and using what they have taken in competition with Plaintiffs and/or their licensees, constitutes misappropriation and unfair competition under the common law.

41. The conduct of Defendants has caused and is causing, and unless enjoined and restrained by the Court will continue to cause, Plaintiffs grave and irreparable injury. Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to preliminary and permanent injunctions.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For a preliminary and permanent injunction enjoining Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert with them, from publicly performing Plaintiffs' copyrighted works;

2. For a preliminary and permanent injunction enjoining Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert with them, from misappropriating Plaintiffs' property and/or competing unfairly with Plaintiffs;

3. For damages as provided for by law, including statutory damages, actual damages and/or Defendants' profits;

4. For prejudgment interest according to law;

5. For Plaintiffs' attorneys' fees, full costs, and disbursements in this action; and

6.     For such other and further relief as the Court may deem proper and just.

## JURY DEMAND

Plaintiffs request a jury trial on all issues so triable.

WILLIAMS & CONNOLLY LLP

By: _____
Paul B. Gaffney (PG 7800)
Christopher N. Manning (CM 4231)
Jessamyn S. Berniker (JB 0686)

725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000

*Attorneys for Plaintiffs American Broadcasting Companies, Inc., CBS Broadcasting Inc., Disney Enterprises, Inc., Fox Broadcasting Company, Spelling Television Inc., Superstation, Inc., TBS Funding Corp., Turner Entertainment Networks, Inc., Turner Network Television LP, LLLP, Universal Network Television LLC, and Universal Television Networks*

April 13, 2006